UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

---

MARCHEZ GOODE, individually and on behalf
of all others similarly situated,

        Plaintiff,

v.

BETTER HOUSING COALITION,

        Defendant.

Case No. 3:20-cv-00116

FLSA COLLECTIVE ACTION
DEMAND FOR JURY TRIAL

---

## COMPLAINT

---

Plaintiff MARCHEZ GOODE, individually and on behalf of all others similarly situated, respectfully moves for judgment against Defendant BETTER HOUSING COALITION ("BHC" or "Defendant") as follows:

**I.    SUMMARY OF ACTION**

1. This is a claim for unpaid overtime compensation in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA").

2. Plaintiff alleges Defendant violated and continues to violate the FLSA through its practice of not paying overtime compensation to Plaintiff and other similarly situated employees.

3. Plaintiff, on behalf of herself and all similarly situated employees, seeks unpaid overtime wages, liquidated damages, and attorneys' fees and costs arising out of the Defendant's FLSA violations.

**II.    JURISDICTION AND VENUE**

1

4.      This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) in that the Plaintiff may bring this action in any appropriate United States District Court.

5.      Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Civil Rule 3(C) since the acts and omissions giving rise to this lawsuit have taken place in this division in the Eastern District of Virginia.

6.      Defendant Better Housing Coalition is subject to personal jurisdiction in the Commonwealth of Virginia. BHC's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over BHC to comply with traditional notions of fair play and substantial justice.

### III.   PARTIES

7.      Goode is a resident of Virginia who was employed by Defendant in a position called "Property Manager." Plaintiff worked for BHC from approximately February 2018 through August 29, 2019. Plaintiff was an "employee" as defined in the FLSA.

8.      Defendant Better Housing Coalition is a Virginia corporation with its principal office address (according to filings with the Virginia State Corporation Commission) at P.O. Box 12117, Richmond, VA, 23241. BHC maintains its principal corporate office at 23 West Broad Street, Suite 100, Richmond, VA 23220. BHC is an "employer" as defined by the FLSA.

9.      At all times relevant, BHC exercised control over the terms and conditions of the employment of Plaintiff and other similarly situated workers.

10.     Plaintiff is informed, believes, and thereon alleges that Defendant's gross annual sales made or business done is $500,000.00 or greater. Defendant operates in interstate commerce by, among other things, buying and/or selling goods and transacting business in

multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states.

## IV. FACTUAL ALLEGATIONS

### A. Background

11. Defendant BHC is a community development corporation. Its portfolio includes approximately 15 multi-family rental communities and about 200 single-family homes in the greater Richmond area.

12. From approximately February 2018 through August 29, 2019, Goode worked for Defendant in the greater Richmond area.

13. During the entire period of her employment, Goode worked for Defendant in a position called "Property Manager."

14. From approximately February 2018 until August 2018, Goode worked as a "Property Manager" at BHC's Monarch Woods rental community.

15. From approximately August 2018 until the end of her employment in August 2019, Goode worked as a "Property Manager" at BHC's Market Square V community.

16. Each of BHC's rental communities has one or more "Property Managers" who work onsite at the rental community.

17. BHC's "Property Managers" are supervised by and report to managers based at BHC's corporate office at 23 West Broad St, Suite 100, Richmond, VA 23220.

18. The manager who Goode reported to was Veda Florence Hawks.

19. BHC's "Property Managers" including Goode were not actually managers. They did not manage the operations of BHC. The primary job duty of the Property Manager position

was performing data entry and filling out paperwork. This includes inputting data from resident rental applications into BHC's computer system, inputting data from invoices into BHC's computer system, inputting information from applications to obtain background checks for applicants using an internet service, preparing reports for BHC summarizing delinquent payments and paid invoices, inputting work orders into BHC's computer system, performing move-out inspection paperwork, and having tenants sign move-out sheets and other paperwork.

20. More than about 90% of the Property Manager job duties involved entering data in the computer system and filling out paperwork.

21. Additional duties of the Property Manager position included cleaning common areas, setting out the continental breakfast for residents, and giving prospective tenants tours of the property.

22. At all times relevant, all BHC Property Managers have had the same basic job duties.

23. As Property Managers for BHC, Goode and other Property Managers did not have authority to hire or fire employees.

24. As Property Managers for BHC, Goode and other Property Managers did not have authority to discipline employees.

25. As Property Managers for BHC, Goode and other Property Managers did not have authority to decide the amount of rent to charge tenants, or to negotiate rent.

26. As Property Managers for BHC, Goode and other Property Managers did not have authority to decide whether or not to grant potential tenants' rental applications.

27. As Property Managers for BHC, Goode and other Property Managers did not have

the authority to make purchases on behalf of BHC or bind BHC to contracts. All purchases other than petty cash (i.e. purchases greater than $100) had to have the approval of a manager in in BHC's corporate office.

28. As Property Managers for BHC, Goode and other Property Managers did not have the authority to negotiate with vendors.

29. As Property Managers for BHC, Goode and other Property Managers did not have the authority to advertise the properties or develop marketing strategies.

30. All decisions with respect to matters of significance were made by BHC's corporate office, not by its Property Managers. BHC's Property Managers did not have the ability to exercise discretion and independent judgment with respect to matters of significance. The primary duties of Goode and BHC's other Property Managers were data entry and paperwork.

31. As a Property Manager, Goode was paid a rate equal to $21.0865 per hour. Upon information and belief, BHC's other Property Managers received similar rates of pay. Goode and other Property Managers were not paid for hours worked above 40 per week.

32. BHC employed and continues to employ at least 15-20 Property Managers in the greater Richmond area at any given time.

33. BHC did not have a timekeeping system for Goode and other Property Managers. There was no system for Property Managers to clock in or out, and no system for Property Managers to report their hours worked each week.

34. During her employment as a Property Manager with BHC, Goode regularly worked more than 40 hours per week.

35. BHC knew or should have known Goode was working more than 40 hours per week because she was required to start work by 8:00 am — to let contractors into properties to perform renovations and other work, and to set up the continental breakfast for residents. Further, the amount of work Goode was required to do meant she had to work through lunch and until 7:30pm on most days. The time stamps on Goode's data entry and emails will confirm that she worked these hours. BHC knew or should have known Goode was working these hours because of these records, and because the amount of work she was assigned, and the fact that BHC required her to start by 8:00am.

36. Even though Goode regularly worked more than 40 hours per week, BHC did not pay her overtime compensation for the time she worked in excess of 40 hours per week.

37. Goode's pay stubs indicate Goode was paid for no more than 40 hours each week, even though she worked more than 40 hours in the week.

38. During the time period when Goode worked at BHC's Monarch Woods property (approximately **2/2018 – 8/1/2018**), Goode worked approximately 40-45 hours per week. This included working through lunch at her desk each day. During this period, Goode worked five days per week, Monday through Friday. She would start work at 9:00am, work through lunch, and end work at around 5:00-6:00pm each day, for a total of approximately 8-9 hours per day, or 40-45 hours per week, for an average of **42.5 hours per week**.

39. During the time period when Goode worked at BHC's Market Square V property prior to the renovation (approximately **8/1/2018 to 1/1/2019**), Goode worked approximately 48.5 hours per week. This included working through lunch at her desk each day. During this period, Goode worked five days per week, Monday through Friday. Four days per week (Monday,

Tuesday, Wednesday, and Friday) Goode would start work at 9:00am, work through lunch, and end work at about 7:00pm, for a total of about 10 hours per day, four days per week. On Thursdays, Goode would start work at 9:00am, work through lunch, and end work at around 5:30pm, for a total of 8.5 hours, one day per week. Thus, during the period of approximately 8/2018 to 1/1/2019, Goode worked for BHC for a total of approximately **48.5 hours per week** (4 days at 10 hours per day, plus one day at 8.5 hours).

40. During the time period when Goode worked at BHC's Market Square V property after the renovation began to the end of her employment (approximately **1/1/2019 to 8/29/2019**) Goode worked approximately 55.5 hours per week. This included working through lunch at her desk each day. During this period, Goode worked five days per week, Monday through Friday. Four days per week (Monday, Tuesday, Wednesday, Friday), Goode would start work at 8:00am, work through lunch, and end work at 7:30pm, for a total of 11.5 hours per day, four days per week. On Thursdays, Goode would start work at 8:00am, work through lunch, and end work at around 5:30pm, for a total of 9.5 hours, one day per week. Thus, during the period of 1/1/2019 to 8/29/2019 Goode worked for BHC for a total of approximately **55.5 hours per week** (4 days at 11.5 hours per day, plus one day at 9.5 hours).

41. BHC knew or should have known Goode worked these hours because the time stamps on her data entry, computer login/logout, phone calls, and emails will confirm that she worked these hours, she discussed the long hours with her supervisor, and BHC required Goode to start work by 8:00am every day after the renovation began.

42. Goode's supervisor knew or should have known that she was working these hours in excess of 40 hours per week. Goode's supervisor regularly observed Goode working in excess

of 40 hours per week due to the times of Goode's emails, phone communications, computer login/logout times, and data entry, and she knew that Goode was required to start work by 8:00am to let the contractors into the property and to prepare the continental breakfast for residents.

43. BHC did not pay Goode any overtime compensation for any of the hours she worked in excess of 40 hours per week during the time she worked for BHC as a Property Manager.

44. BHC had a policy and practice of not paying overtime compensation to Goode or any of its Property Managers, even though the job duties of all Property Managers were substantially the same.

45. BHC did not pay Goode or its other Property Managers overtime compensation for the time they worked in excess of 40 hours per week.

46. BHC regularly scheduled or required Property Managers including Goode to work in excess of 40 hours per week.

47. BHC's Property Managers including Goode regularly worked in excess of 40 hours per week.

48. BHC knew or should have known their Property Managers including Goode were working in excess of 40 hours per week, because of the times of Property Managers' emails, phone communications, computer login/logout times, and data entry, communications with supervisors about work hours, security camera footage, and other means.

49. If BHC maintained accurate employee time records, the records will show BHC's Property Managers including Goode working in excess of 40 hours per week.

50. BHC's Property Managers including Goode were entitled to overtime compensation equal to one and a half times their regular rate of pay for all time worked in excess of 40 hours per week.

**B.    Defendant's Policy and Practice of Not Paying Overtime Compensation to Property Managers**

51. Even though Goode and the other Property Managers worked more than 40 hours in a week, BHC did not pay them overtime compensation. BHC did not pay its Property Managers including Goode any compensation for hours worked in excess of 40 per week.

52. BHC had a policy and/or practice of not paying overtime compensation to its Property Managers including Goode for time worked in excess of 40 hours per week.

53. BHC's pay records show its practice of not paying overtime compensation to Goode and other Property Managers.

54. BHC suffered and/or permitted its Property Managers including Goode to work more than 40 hours per week without overtime compensation.

55. BHC knew or should have known that its policy and/or practice of not paying Property Managers overtime compensation for time worked in excess of 40 hours per week violated the overtime provisions of the Fair Labor Standards Act.

**C.    Additional Allegations**

56. BHC's Property Managers including Goode were not employed in any bona fide executive, administrative, or professional capacity.

57. Based on the nature of Goode's and other Property Managers' job duties, there is no FLSA exemption that applies to preclude them from being paid one and one-half times their

regular rate of pay for all hours worked in excess of 40 per week.

58. Defendant willfully violated the FLSA by not paying Goode and its other Property Managers overtime compensation.

59. At all relevant times Defendant intended to deprive its Property Managers including Goode of the overtime pay to which they were entitled to under the FLSA, or acted with reckless disregard for their rights under the FLSA.

## V. COLLECTIVE ACTION ALLEGATIONS

60. Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as a Representative Plaintiff.

61. Upon information and belief, Defendant employs, and has employed, multiple persons who were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

62. Upon information and belief, these employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

63. Plaintiff brings her FLSA claims on behalf of herself and all past and present employees of Defendant who, within the past three years, worked as Property Managers or in positions having substantially similar job duties, who worked more than 40 hours at least one week and were not paid an overtime premium for hours worked over 40.

64. The FLSA "collective" or "class" of similarly situated employees is composed of all present and former employees of Defendant with substantially similar job duties to Plaintiff, who were paid under a pay scheme similar to Plaintiff, and have been employed within three (3) years of the date of the filing of this action.

65. Plaintiff estimates there are at least 20 similarly situated employees who fit the above definition and were deprived of overtime pay.

66. Defendant's pay records, and Defendant's practice of not tracking Property Manager time, show Defendant's policy and practice of not paying overtime compensation to Property Managers and similarly situated employees.

67. Upon information and belief, Defendant compensated, and continues to compensate, those similarly situated to Plaintiff on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

68. Upon information and belief, Defendant's pay operations are centrally managed as a single enterprise, and all or most of Defendant's employees who are paid similarly to Plaintiff are subject to common time-keeping and payroll practices.

69. Defendant's policy of not paying overtime compensation amounted to a willful or reckless disregard of its employees' rights under the FLSA.

70. Defendant had no good faith basis to believe that not paying overtime compensation was somehow allowable under the FLSA.

71. Plaintiff asserts that Defendant's willful disregard of the overtime wage laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period.

72. Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the FLSA.

73. At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

## VI.   CLAIMS

### COUNT I: VIOLATIONS OF FAIR LABOR STANDARDS ACT
### (Overtime Violations)

74. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

75. At all times relevant herein, Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

76. The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, Plaintiff and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of forty hours per week.

77. By failing to compensate Plaintiff and similarly situated employees with overtime compensation for their overtime hours worked, Defendants have violated, and continue to violate the FLSA.

78. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

79. Plaintiff seeks damages for herself and all others similarly situated in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests the following relief against Defendant:

A. Certifying this case as a collective action;

B. Judgment that Plaintiff and all similarly situated employees were non-exempt employees entitled to protection under the FLSA;

C. Judgment against Defendant for violations of the overtime and/or minimum wage provisions of the FLSA;

D. Judgment that Defendant's violations as described above were willful;

E. Money damages for all unpaid overtime and/or minimum wage compensation;

F. Liquidated damages in an amount equal to all unpaid overtime and/or minimum wages owed to Plaintiff and all others similarly situated;

G. Pre-judgment and post-judgment interest;

H. Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

I. Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the FLSA;

J. Equitable and injunctive relief as allowed by law; and

K. Any and all further relief permissible by law,

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

13

Respectfully submitted,

MARCHEZ GOODE,
individually and on behalf of all others similarly situated,
By Counsel


Dated:          February 20, 2020

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiff

## CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendants or their authorized agents at the following addresses, or any other addresses where Defendants may be found:

BETTER HOUSING COALITION
SERVE:   J. Conrad Garcia, Registered Agent
              Williams Mullen
              200 South 10th Street
              Suite 1600
              Richmond, VA, 23219 - 0000

/s/Timothy Coffield
Counsel for Plaintiff